IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREIDMAN, et al.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | NO. 14-6071 |
| **PHILADELPHIA PARKING** | : | |
| **AUTHORITY, et al.** | : | |

**MEMORANDUM**

**KEARNEY, J.**                                                                                                    **MAY 14, 2015**

The Fourteenth Amendment, as enforced by 42 U.S.C. §1983, guarantees citizens' rights to due process and equal protection of law. The First Amendment empowers citizens to freely speak on matters of public importance without fear of retaliation by those acting under color of state law. These protections, however, do not empower businesses to automatically transform business priorities conflicting with regulatory oversight into property and liberty interests subject to constitutional protection. Opening a taxi service with touted unique offerings to Philadelphians four years ago, Plaintiffs allegedly faced regulatory scrutiny and delay in expanding their business priorities orchestrated by the Philadelphia Parking Authority and two of its senior officials. In the accompanying Order on Defendants' motion, we dismiss Plaintiffs' prolix recitation of alleged harms to their business priorities as depriving them of due process or equal protection. At this preliminary stage, we find Plaintiffs' specific litany of Defendants' multiple actions allegedly retaliating against Plaintiffs' public challenges and regulatory protests of Defendants' oversight of taxi service states a §1983 claim for First Amendment retaliation. Plaintiffs do not state grounds for mandamus. Discovery into the First Amendment retaliation claim, damages and possible Eleventh Amendment immunity will inform our further analysis.

I. **FACTS ALLEGED IN COMPLAINT**

In 2011, Plaintiffs[1] launched a taxi service to provide Philadelphians with unique services, including wheelchair accessible vehicles ("WAV") and "green" vehicles. (Complaint at ¶50). Under its regulatory authority, Defendant Philadelphia Parking Authority ("PPA") issued numerous certificates of public convenience ("CPCs") and accompanying medallions to Plaintiffs. For reasons not pled, Defendant Milstein allegedly released Plaintiff Freidman's personal financial information to brokers who were unrelated to transfers of a CPC and medallion, then accused Freidman of falsifying personal financial statements and other documents. (*Id.*) Milstein made these statements in retaliation for the Plaintiffs' decision to contract with a broker not approved by Milstein. (*Id.* ¶57) Plaintiffs then raised Milstein's allegedly retaliatory conduct to the Defendants PPA and Fenerty who may have hired a private investigator to investigate Milstein's comments. Plaintiffs allege that PPA's investigator instead investigated Friedman's qualifications to purchase medallions, and then withheld the investigator's report. (*Id.* ¶60) Plaintiffs claim PPA notified medallion buyers and sellers not to do business with Plaintiffs because transfers with Plaintiffs took more time to complete. Allegedly motivated by Plaintiffs' decision to contract with an unfavored broker, Defendants

---

[1] Plaintiffs Evgeny Freidman ("Freidman") and Everett Abitbol ("Abitbol") jointly own and operate Plaintiff Philadelphia Taxi Management, LLC ("Philadelphia Taxi") and Plaintiff Freedom Taxi Association, LLC ("Freedom Taxi"). (Complaint at ¶7) Philadelphia Taxi is the agent for numerous taxicab medallion owners in Philadelphia and represents owners in proceedings before the PPA. (*Id.* ¶2) Freedom Taxi is authorized by the PPA to provide dispatching services to taxicab medallion owners in Philadelphia. (*Id.* ¶4) Plaintiffs also sue PPA's Executive Director Vincent J. Fenerty, Jr. ("Fenerty") and Charles Milstein ("Milstein"), an assistant to James Ney, Director of PPA's Taxicab and Limousine Division in both their individual and official capacities. (*Id.* ¶¶14-16).

allegedly undertook a series of actions designed to hinder or impede Plaintiffs' ability to operate their taxi business in Philadelphia.

### *Application for dispatcher certificate [¶¶ 64-93]*

Plaintiffs' first claim, in chronological order, is Defendants delayed eight months in approving their application for a dispatcher certificate. (*Id.* ¶¶ 64-93) In July 2011, Freedom Taxi applied for a dispatcher certificate at the same time it filed a petition to convert medallion cabs to WAVs or "green" vehicles. Freedom Taxi wanted to contract with a meter system company known as Creative Mobile Technologies, LLC ("CMT"), and not PPA's favorite vendor. While their dispatcher application remained pending, Plaintiffs Friedman and Abitbol made public statements about the lack of "green" and WAVs in Philadelphia and publicly criticized PPA generally for their oversight. In less than four months, PPA "conditionally approved" the dispatcher application and required Freedom Taxi to meet certain other requirements within thirty (30) days. By December 2011, PPA approved Plaintiffs' application but only permitted Plaintiffs to provide dispatch services to "green" vehicles or WAVs. Thereafter, Plaintiffs sought a waiver and by March 13, 2012, Freedom Taxi sought reconsideration of the PPA's Order denying in part and conditionally granting in part Freedom Taxi's waiver request. Thereafter, PPA advised Plaintiffs that its issues were moot. (*Id.* ¶85). Plaintiffs allege that PPA's delayed for eight (8) months in approving the application and petition to retaliate against Freedom Taxi's choice to use CMT rather than Verifone and for Plaintiffs' public statements critical of the PPA. (*Id.* ¶¶ 86-87).

### *Plaintiffs' broker applications [¶¶ 94-108]*

Approximately three (3) months after filing its reconsideration on the application for dispatcher certificate, Plaintiffs Friedman and Abitbol filed broker applications with PPA to be

able to buy and sell taxi medallions. In September 2013, PPA conditionally approved Plaintiff Abitbol's broker application subject to him attending mandatory training. As learned at oral argument, PPA then approved Friedman's broker application during the pendency of this case. Plaintiffs allegedly still need to satisfy additional PPA training requirements to obtain full licensure, which they had not done as of oral argument.[2] (Oral Arg. Tr., p. 29).

### *Plaintiffs purchase $30 million in taxi medallions [¶¶108-122]*

Sometime in early 2013, Plaintiffs applied for the transfer of $30 million of medallions. In May 2013, a third party, Germantown Cab Company ("Germantown Cab") tried to file a protest to the Plaintiffs' transfer but did not pay the filing fee and PPA rejected its protest filing. Germantown Cab filed an action in Commonwealth Court and during its pendency, PPA settled with Germantown Cab allowing it to file a protest and waive its filing fee. Plaintiffs allege that PPA's settlement with Germantown Cab caused their $30 million transfer to be delayed.

### *Plaintiffs protest other medallion transfer applications and PPA allegedly retaliates*

Plaintiffs then discovered PPA approved deficient transfer applications with incomplete financial documentation, insufficient credit scores, unreleased liens, missing corporate documents and insufficient business and financial plans. (Complaint at ¶125) Accordingly, Plaintiffs believed they would be harmed if the PPA continued to approve these applications without minimum requirements. As such, in October 2013, Freedom Taxi began protesting medallion transfer applications that it believed to be deficient. (*Id.* at ¶129)

A large portion of Plaintiffs' Complaint specifies a variety of PPA's actions allegedly taken solely against them to retaliate against their protesting alleged deficient transfer

---

[2] Plaintiffs' counsel represented these facts during oral argument. Plaintiffs also claims that PPA unreasonably delayed a decision on Freedom Taxi's request to provide advertising wrap on its taxis, which was eventually approved seven (7) months after the application. It is unclear how this delay ties into any particular claim.

applications. (*Id.* at ¶¶ 130–257). These actions include a campaign to punish Plaintiffs by: threatening Freedom Taxi vehicles with inspection delays and harder inspection processes; issuing groundless citations for Freedom Taxi's technology; harassing drivers regarding security deposits; withholding key documents from Freedom Taxi in its inspection of the medallion transfers; "embarrassing Friedman and Abitbol at hearings"; disparaging remarks about Freedom Taxi at a board meeting; delaying ruling on a petition to amend the regulations; threatening to sanction Freedom Taxi for protesting; blaming Plaintiffs for declining medallion values in the industry; issuing a second round of citations for Freedom Taxi's use of technology; requesting protests of Plaintiffs' medallions in the Pennsylvania Bulletin; actively seeking to prevent Plaintiff Friedman from expanding his medallion ownership in Boston; and, sending untruthful letters to hearing officers blaming Freedom Taxi after PPA's denial of new wheelchair accessible vehicle medallions.

## II. ANALYSIS

Plaintiffs seek damages, injunctive relief and mandamus claiming, under 42 U.S.C. § 1983, each Defendant: wrongly retaliated against Plaintiffs' exercise of their First Amendment rights of free speech and protest; violated each Plaintiff's Fourteenth Amendment rights to procedural and substantive due process and equal protection; and, failed to exercise statutory duties warranting mandamus to compel compliance. Defendants move to dismiss each of the three claims.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

We apply a three-step analysis when considering a 12(b)(6) motion: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679) (footnote omitted).

### A. Section 1983 Claims

Section 1983 does not create substantive rights, but provides "a remedy for the deprivations of rights established elsewhere in the Constitution or federal laws." *Green v. Chester Upland Sch. Dist.*, No. 14-3685, 2015 WL 409569, at *2 (E.D. Pa. 2015) (citing *Kopec v. Tate*, 361 F.3d 772, 775-76 (3d Cir. 2004)). To survive a motion to dismiss a § 1983 claim, plaintiffs must allege facts sufficient to show (1) violation of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed by a person

acting under color of state law. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).[3]

### 1. Plaintiffs state a §1983 claim for retaliatory response to their exercise of First Amendment rights to speech and protest.

Plaintiffs first allege that the Defendants retaliated against them in a campaign of acts designed to adversely affect their business in response to their exercise of First Amendment rights to speech and for protesting the transfer of other medallions. We find Plaintiffs state a claim at this preliminary stage, having alleged: (1) constitutionally protected speech, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

Plaintiffs claim two activities give rise to a First Amendment retaliation claim. First, they claim they made public statements critical of PPA for their oversight, and desiring to change the taxicab industry in Philadelphia by introducing more "green" vehicles and WAVs. (Compl. ¶74-75). Second, Plaintiffs claim they utilized available procedures to protest medallion transfer applications between other taxi service providers. (*Id.* ¶129). Neither party contends that these activities are not protected by the First Amendment.[4]

---

[3] During oral argument, we questioned whether the PPA may avail itself of Eleventh Amendment immunity in light of the Pennsylvania Supreme Court's holding in *Blount v. Philadelphia Parking Auth.*, 965 A.2d 226 (Pa. 2009)("We hold that the Philadelphia Parking Authority is a Commonwealth agency for the purposes of regulating taxicabs.") The parties did not pursue this theory at this dismissal stage, and these arguments have not been briefed by the parties. Defendants did not create a record at this preliminary stage and we reserve any ruling until the parties address immunity.

[4] Speech that is "constitutionally protected" under the First Amendment is that which takes place when one speaks as a citizen about a matter of public concern, *i.e.,* a matter of political, social or other concern to the community at large, as opposed to a personal matter. *See Garcetti v.*

As for retaliation, Plaintiffs allege they were the subject of significant retaliatory acts by PPA as a consequence of exercising their First Amendment rights, each of which is sufficient to deter a person of ordinary firmness from exercising rights to free speech. Plaintiffs claim Defendants: interfered with their medallion transfer applications (Compl. ¶¶52-63); delayed approvals on their petition to convert vehicles to "green" vehicles or WAVs and their dispatcher's certificate application (*Id.* ¶64-87); created 'hurdles' for Plaintiff's use of CMT technology (*Id.* ¶¶88-91); changed requirements for assessing medallions and fee structure for "green" vehicles and WAVs (*Id.* ¶¶92-93); delayed final decision on Abitbol's and Freidman's broker applications (*Id.* ¶¶94-107); subjected Freedom Taxi vehicles to more arduous inspections (*Id.* ¶¶132-133); issued citations to Freedom Taxi that Plaintiffs claim are groundless (*Id.* ¶¶140-165); knowingly made publicly false statements about Freedom Taxi (*Id.* ¶¶193-206); and moved to dismiss protests filed *by* Freedom Taxi but not *against* Freedom Taxi (*Id.* ¶¶232-234).

Plaintiffs allege that the retaliatory actions were intended to, and did affect their daily operations and would be sufficient to deter a person of ordinary firmness from exercising constitutional rights. Defendants contend that as a matter of law, their actions are "de minimus," would not deter a person of ordinary firmness from exercising his constitutional rights, and further are not causally connected to any First Amendment speech by Plaintiffs. These issues require analysis of the relevant facts not presently before the Court.

---

*Ceballos,* 547 U.S. 410 (2006).   Based on our deference to the Complaint and as the parties do not presently argue this point, we will reserve any ruling on constitutionally protected speech.

We do not opine whether PPA's alleged conduct is appropriate.[5] We only find the Complaint sufficiently states a viable §1983 claim based on the abridgment of Plaintiffs' First Amendment rights so as to avoid dismissal now.

## 2. Plaintiff cannot state a claim for a violation of procedural or substantive due process rights.

### *Procedural Due Process -Property interest*

Plaintiffs' claim that each Defendant violated their procedural due process rights under § 1983 must allege (1) deprivation of a protected property or liberty interest and (2) that the procedures available did not provide due process of law. *Hill v. Borough of Kutztown,* 455 F.3d at 233-34; *Arneault v. O'Toole,* 864 F. Supp. 2d 361, 395 (W.D. Pa. 2012) *aff'd on other grounds,* 513 F. App'x 195 (3d Cir.2013). At oral argument, Plaintiffs clarified that their property interest is the right to pursue their business free from government interference, and not the application process itself.

Plaintiffs correctly state that ownership of taxi medallions is recognized as a property right under state law. 53 Pa. C.S.A. §5713. Plaintiffs, however, do not allege any activity by Defendants that interfered with *ownership* of these rights. At oral argument, Plaintiffs clarified that their claimed protected property interest is the right to be free to pursue an occupation and business without undue governmental interference, and their right to use their property for that purpose. Plaintiffs allege Defendants' actions affected business *operations* by, for example, taking time to process applications, scrutinizing inspections and delaying approval of new vehicles. These allegations, largely relating to a First Amendment retaliation claim, do not

---

[5] "A defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity." *Lauren W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir.2007) (citing *Ambrose,* 303 F.3d at 493). These disputed facts will likely be revisited at summary judgment.

implicate Plaintiffs' *ownership* rights in their medallions, or an ability to engage in their chosen business.

"A property interest subject to protection by the due process clause results from a 'legitimate claim of entitlement' created by an independent source such as state law." *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 679 (3d Cir. 1991)(quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. at 1972. Allegations that PPA delayed approval of certificates of public convenience or scrutinized operations, while bothersome to Plaintiffs and possibly relevant for a First Amendment retaliation claim, do not necessarily implicate their ownership of medallions. Plaintiffs also do not direct us to any case holding there is a constitutional property right to operate a taxi business entirely free from governmental regulation.

### *Procedural due process- Liberty interest*

Plaintiffs further claim that their so-called liberty interest is the right to be free of business disparagement allegedly engaged in by the Defendants. The United States Supreme Court recognizes a constitutionally protected liberty interest in one's reputation only where the injury to reputation is accompanied by alteration of one's legal status under state law. *Paul v. Davis,* 424 U.S. 693, 708–09 (1976). Federal due process rights are implicated when state-occasioned defamation is coupled with the deprivation of a "more tangible interest." *Hill v. Borough of Kutztown,* 455 F.3d 225, 236 (3d Cir.2006), citing *Baraka v. McGreevey,* 481 F.3d 187, 208 (3d Cir.2007). This is commonly referred to as the "stigma-plus" test. *Hill,* 455 F.3d at

236 (plaintiff asserting due process claim based on reputational harm "must show a stigma to his reputation *plus* deprivation of some additional right or interest.)

To satisfy the first part of the "stigma-plus" test, Plaintiffs must allege that Defendants' purportedly stigmatizing statements (1) were made publicly, and (2) were false. *Hill,* 455 F.3d at 236. Plaintiffs allege that PPA made false statements at board meetings, including statements blaming Freedom Taxi for the lack of WAVs on the road (¶¶193-201); made false statements in an email blaming Freedom Taxi for declining medallion values (¶240); questioned Abitbol's and Freidmans's business practices and qualifications (¶¶54-56) and discouraged others from doing business with Plaintiffs (¶¶53-63).

Even if the Complaint properly pleaded "stigma", it fails to allege a sufficient "plus" to state a constitutionally protected liberty interest under the stigma-plus test. *See Arneault v. O'Toole,* 864 F. Supp. 2d 361, 396-97 (W.D. Pa. 2012) *aff'd on other grounds*, 513 F. App'x 195 (3d Cir.2013). Plaintiffs do not allege alteration of their legal status, in *addition* to alleged stigmatizing statements. Plaintiffs have not been deprived of the right to engage in the taxicab industry in Pennsylvania, nor do they so allege. Accordingly, there is no significant liberty interest or "stigma-plus" deprivation at issue. *See e.g. Burns v. Alexander*, 776 F.Supp.2d 57 (W.D.Pa.2011).

### *Procedural due process - Available procedures*

Even if Plaintiffs could identify a recognized property or liberty interest entitled to protection, they must still must allege that the process afforded them was constitutionally inadequate to avoid unlawful deprivation of those rights to state a procedural due process claim, and they cannot. *Hill, supra*, 455 F.3d at 234; *Revell v. Port Auth. of N.Y. & N.J.,* 598 F.3d 128, 138 (3d Cir.2010). A state affords requisite due process when it provides reasonable remedies to

rectify legal errors by an administrative body. *MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 436 (E.D. Pa. 2011) *aff'd,* 476 F. App'x 282 (3d Cir. 2012), citing *Cohen v. City of Philadelphia,* 736 F.2d 81, 86 (3d Cir.1984), *cert. denied,* 469 U.S. 1019 (1984). Plaintiffs acknowledge that there are statues and regulations establishing procedures to pursue grievances and protests, and they even utilized these procedures to challenge PPA action. *See e.g.* 53 Pa.C.S. §5705(a), (d); 52 Pa.Code §1005.11. Procedural due process requires that parties be given a meaningful opportunity to be heard; it does not provide unilateral entitlement to relief in the prompt time frame desired by the petitioner. There is no plausible allegation that the taxicab regulations and procedures are insufficient to provide meaningful opportunity to be heard.

### *Substantive Due Process*

Plaintiffs also do not state a claim for violation of substantive due process. Government action violates substantive due process when it deprives an individual of a property right through conduct that "shocks the conscience." *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998) ("[T]he cognizable level of executive abuse of power is that which shocks the conscience."); *United Artists Theatre Circuit v. Twp. of Warrington,* 316 F.3d 392, 399-400 (3d Cir.2003); *Nicholas v. Pa. State Univ.,* 227 F.3d 133, 139-40 (3d Cir.2000). To prevail on a substantive due process claim, Plaintiffs must first allege (1) a state actor engaged in conduct directed at Plaintiffs, (2) the conduct deprived plaintiff of a protected property or liberty interest and (3) the circumstances may be said to "shock the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008).

Substantive due process protects only those rights that are "'fundamental' under the United States Constitution." *Nicholas,* 227 F.3d at 140; *see also Hill,* 455 F.3d at 234 n.12. As a threshold matter, Plaintiffs have not established interference with a fundamental interest to which

substantive due process protection applies. An injury to business reputation is not sufficient. *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 399–404 (3d Cir.2000) ("[D]efamatory statements that curtail a plaintiff's business opportunities do not suffice to support a substantive due process claim.") While the liberty to pursue a particular calling or occupation *is* protected, Plaintiffs do not plausibly allege that Defendants' conduct wholly deprived them of the right to participate in their chosen profession -- taxi cab services. In fact, Plaintiffs admittedly have continued in this business and occupation, further undermining any claim of deprivation. *See Arneault,* 864 F.Supp.2d at 402.

Plaintiffs also do not allege conduct or behavior by Defendants so egregious and outrageous that it "may fairly be said to shock the contemporary conscience." *Burns*, 776 F. Supp. 2d at 92-93. Plaintiffs' substantive due process claim, accordingly, fails.

### 3. Plaintiffs cannot state a claim for violation of its equal protection rights under "class-of-one".

The Equal Protection Clause states: "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (internal quotations and citations omitted). The Supreme Court mandates the equal protection clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr. Inc.,* 473 U.S. 432, 439 (1985).

Plaintiffs do not claim they are within the protected classes recognized for purposes of the equal protection clause, and instead to invoke the "class of one" theory announced in *Village*

*of Willowbrook*. To state a claim under this theory, a plaintiff must allege (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564; *Hill*, 455 F.3d at 239; *Pressley v. Pa Dep't of Corrs.*, 365 F.App'x 329, 331-32 (3d Cir. 2010).

To be "similarly situated," parties must be "alike in all relevant aspects." *Startzell v. City of Philadelphia,* 533 F.3d 183, 203 (3d Cir.2008) (internal quotation marks omitted). To defeat a motion to dismiss, Plaintiffs must plausibly allege the existence of similarly situated individuals whom Defendants treated differently, including specific factual allegations describing them. *Perano v. Twp of Tilden*, 423 F.App'x 234, 238 (3d Cir. 2011). Where a complaint fails to identify similarly situated parties with the requisite specificity, the class of one claim will fail. *Id.*; *see also Levenstein v. Salafsky,* 414 F.3d 767, 776 (7th Cir. 2005).

Plaintiffs do not plead specific facts regarding existence of similarly situated parties. Accordingly, they have not "made plausible the conclusions that those parties exist and that they are like him in all relevant respects." *Perano*, 423 F. App'x at 238-39. To the contrary, the theme of Plaintiffs' claims is they are treated differently because they are different than the taxi status quo in Philadelphia and challenge the Defendants' present decision matrix and authority. Plaintiffs allege they were decidedly *unlike* other applicants, maintaining throughout the Complaint they are unique and distinguishable from other taxi operators in many respects.[6] As Plaintiffs have not plausibly established they were intentionally treated differently from other similarly situated parties, their equal protection claim is dismissed.

---

[6] For example, Plaintiffs claim they are the only ones to seek WAVs and "green" vehicles, and the only ones to contract with another meter entity. Plaintiffs admittedly are not 'similarly situated in all relevant respects' to other taxi cab operators such that could give rise to an equal protection claim.

**B. Personal involvement by Defendants Millstein and Fenerty**

For their § 1983 claim to survive a motion to dismiss, Plaintiffs must allege "each and every defendant was personally involved in depriving him of his rights." *Kirk v. Roan,* No. 04-1990, 2006 WL 2645154, at *3 (M.D.Pa. Sept.14, 2006); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005)("A defendant in a civil rights action must have personal involvement in the alleged wrongdoing."). A defendant's personal involvement in a constitutional violation may be established by alleging "personal direction or of actual knowledge and acquiescence." *Evancho,* 423 F.3d at 353; *see also Andrews v. City of Phila.,* 895 F.2d 1469, 1478 (3d Cir.1990).

Plaintiffs adequately allege personal involvement by Defendants Milstein and Fenerty, sufficient to hold PPA liable under §1983. Plaintiffs allege Defendants Milstein and Fenerty represent the actions and policy of PPA, and Milstein is directing several of the retaliatory acts. (Compl., ¶¶ 15-16, 53-58, 62-63, 103-105). Defendants dispute these allegations, but must develop a factual record. Based on the sufficiency of Plaintiffs' allegations, the Court denies Defendants' motion to dismiss any Defendant on the First Amendment retaliation claim at this stage.

**C. Plaintiffs do not state facts warranting Mandamus.**

Our jurisdiction to entertain Plaintiffs' petition for a writ of mandamus derives from 28 U.S.C. §1651, which grants us the power to "issue all writs necessary or appropriate in aid of (our) ... jurisdiction and agreeable to the usages and principles of law." This is an extreme remedy that is granted only in extraordinary situations. *Kerr v. U. S. Dist. Court for N. Dist. of California*, 426 U.S. 394, 402 (1976). To justify this extraordinary remedy, a petitioner must show both a clear and indisputable right to the writ and that he has no other adequate means to obtain the relief desired. *In re Cook*, 589 F. App'x 44, 45 (3d Cir. 2014); *see also Haines v.*

15

*Liggett Group Inc.,* 975 F.2d 81, 89 (3d Cir.1992); *Larsen v. State Employees Retirement System*, 553 F.Supp.2d 403, 426 (M.D. Pa. 2008). "If any one of the foregoing elements is absent, mandamus does not lie." *Larsen,* 553 F. Supp. 2d at 426. Neither is present in this case.[7]

Plaintiffs have no "clear legal right" to either a broker application or to amend PPA regulations. The PPA also has no "mandatory duty" to award Plaintiffs their requested relief, nor do Plaintiffs allege so. Relevant governing regulations state that the requested acts are discretionary, and the Court declines to interfere with Defendants' discretion to process applications in accordance with their own sound judgment. Finally, as Defendants correctly point out, Plaintiffs are not without a remedy to seek relief from the PPA under governing regulations. *See e.g.* 52 Pa. Code §1005.22. Plaintiffs' request for Writ of Mandamus is denied.

### III.   CONCLUSION

Notwithstanding the pleading of facts unrelated to a constitutional claim, the gravamen of Plaintiffs' claim is PPA and its decision makers retaliated against them for exercising their First Amendment rights to publicly challenge the management of the taxicab business in Philadelphia, including in matters of access for handicapped persons and environmentally friendly vehicles. On this preliminary record, we find Plaintiffs sufficiently plead a §1983 claim against all Defendants for retaliating against Plaintiffs' exercise of their First Amendment rights. Plaintiffs do not state §1983 claims for deprivation of their constitutional rights to procedural or substantive due process or equal protection. Plaintiffs also do not allege sufficient facts to warrant mandamus relief.

---

[7] During oral argument, Plaintiffs informed the Court that PPA granted conditional approval to Plaintiffs Abitbol and Freidman's broker applications, subject their completion of training sessions, and has already ruled on Plaintiffs' petition seeking to amend regulations. This renders Plaintiffs' requests for mandamus moot.